**H. D. MERRELL, Jr., Appellant,**

v.

**FANNING & HARPER et al., Appellees.**

**No. 1305.**

Court of Civil Appeals of Texas, Tyler.

April 3, 1980.

Raymond E. North, Dallas, for appellant.

James A. Ellis, Jr., Carrington, Coleman, Sloman & Blumenthal, Walter H. Dunlap, Turner, Rodgers, Sailers, Jordan & Calloway, Thomas P. Earls, Dallas, for appellees.

MOORE, Justice.

This is an appeal from a summary judgment. Plaintiff, H. D. Merrell, Jr., filed suit against Robert A. Fanning and Harlan Harper, d/b/a Fanning & Harper, First Texas Savings Association of Dallas, John D. Flickinger, and Clarence Jones, for damages alleging that defendants entered into conspiracy to deprive him of his property by wrongfully causing an execution sale of a duplex owned by plaintiff. In the alternative, plaintiff sued each defendant individually, alleging that as a result of the conduct of each, he suffered the loss of title and possession of his property. Fanning & Harper, First Texas, and Flickinger moved for summary judgment. In its final judgment, the court granted defendants' motions for summary judgment and granted Merrell's request for a nonsuit against Clarence

Jones. Merrell has duly perfected an appeal from that judgment.

We affirm.

Merrell was sued for divorce by his wife in the Domestic Relations Court Number 3 in Dallas County on July 16, 1973. Merrell hired Fanning & Harper to represent him. One year later, subsequent to being discharged by Merrell because he was unsatisfied with their settlement offers, Fanning & Harper filed a motion to withdraw from the case. The court granted their motion. Fanning & Harper then filed suit against Merrell in the 192nd District Court of Dallas County for their accrued fees and present attorney's fees in the amount of $6,771.86. They later intervened in the divorce suit, suing for the same amount. Merrell filed a plea in abatement, contending that they could not intervene because the previously filed suit was still pending. On October 22, 1974, the trial court denied Merrell's plea and awarded Fanning & Harper their attorney's fees. Merrell appealed from that judgment but did not file a supersedeas bond. On March 4, 1975, pursuant to an application by Fanning & Harper, Clarence Jones, the sheriff of Dallas County, conducted a sheriff's sale and sold the property to John Flickinger for $7,800.00 subject to a deed of trust lien held by defendant, First Texas. Allegedly, Flickinger called Merrell's attorney, Jerry S. Hughes, in March 1975 and told him that since he desired to live in one side of the duplex, he would make the mortgage payments. Flickinger allegedly stated that if Fanning & Harper won the appeal, he, Flickinger, would continue to own the property, but if Merrell won, the mortgage payments would be treated as rent. In March, Flickinger collected the rent deposits and took the mortgage payment book from Merrell's accountant.

In April 1975, Flickinger applied to First Texas to assume the loan. First Texas accepted his application subject to the completion of the assumption, the title policy, and the conveying instruments. Before the completion of the papers, Flickinger attempted twice to make a payment on the loan, but First Texas returned the checks. Although the assumption papers were never completed, Flickinger continued to collect rent on the duplex, manage it, and live in it.

On July 19, 1975, Merrell gave a warranty deed to the property to his attorney, Victor McCrea. Thereafter, on August 28, 1975, this court, in *Merrell v. Merrell*, 527 S.W.2d 250 (Tex.Civ.App.-Tyler 1975, writ ref'd n. r. e.), reversed the judgment of the domestic relations court as to the award of attorney's fees to Fanning & Harper and abated their intervention on the ground that Fanning & Harper had another suit pending for attorney's fees in the 192nd District Court of Dallas County. The appellate court's judgment did not set aside the execution sale or the sheriff's deed to Flickinger.

On September 22, 1975, Jim Shanks of First Texas, after being told by the title company that arrangements had been made to obtain a quitclaim deed from the Merrells so that the title could be cleared, received several checks written by Flickinger for payment of the mortgage. Three days later, on September 25, 1975, Merrell's attorneys, Hughes and McCrea, discussed arrangements with Shanks for Merrell to bring the account current. Shanks told them that if they could bring the account current, First Texas would not foreclose. Apparently, after talking to Shanks, Hughes and McCrea attempted to evict Flickinger from the duplex. In response, Flickinger stopped payment on the checks. On October 1, 1975, First Texas gave notice to all parties that the delinquent payments were due. On October 14, 1975, First Texas notified all parties that the loan had been accelerated and foreclosure notices had been posted. On November 3, 1975, Merrell attempted to stop the foreclosure sale by an injunction, but the 192nd District Court denied the injunction. The next day a substituted trustee sold the property to an attorney for Flickinger, who then transferred the property to Flickinger.

After their suit for attorney's fees was reversed, Fanning & Harper continued to pursue their claim for attorney's fees against Merrell. They dismissed their cause of action for attorney's fees in the 192nd District Court and had the domestic relations court reset their abated case for trial. On May 6, 1976, Merrell filed a motion to dismiss the case. One of Merrell's contentions in the motion was that Fanning & Harper had received payment of the debt in full at the time the property was sold at the sheriff's sale and that the debt was thereby extinguished. On June 1, 1976, the court granted the motion and dismissed the case. The judgment recited that the case was dismissed because the debt had been satisfied. Thereafter, Merrell filed the present suit against defendants, Fanning & Harper, First Texas Savings Association, and John D. Flickinger, seeking damages.

In the summary judgment practice, the question on appeal, as well as in the trial court, is not whether the summary judgment proof raises fact issues with reference to the essential elements of the plaintiff's claim or cause of action, but is whether the summary proof establishes as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of the plaintiff's cause of action. The following sentence of paragraph (c) of Rule 166–A, Tex.R.Civ.P., governs. It provides:

> ". . . The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, admission and affidavits, if any, on file at the time of the hearing, or filed thereafter and before judgment with permission of the court, show that, except as to the amount of damages, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues as expressly set out in the motion or in an answer or any other response. . . ."

The judgment sought should be granted, and if granted, should be affirmed, only if the summary judgment record establishes a right thereto as a matter of law. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827 (Tex. 1970).

Before discussing defendants' motions for summary judgment directed to plaintiff's claim founded on a conspiracy, we will discuss the motion of each defendant seeking a summary judgment on plaintiff's alternative claim for damages against each of them individually. For convenience we will discuss each motion separately since the facts, as well as the law, vary as to each defendant.

## MERRELL V. FANNING & HARPER

Merrell sued the law firm of Fanning & Harper for damages, alleging that after Fanning & Harper was awarded the $6,771.86 judgment for attorney's fees in the Domestic Relations Court of Dallas County, he timely perfected an appeal. He alleged that during the pendency of the appeal Fanning & Harper, with full knowledge of the appeal, wrongfully and with malicious intent caused execution to be levied on his property and caused the same to be sold at a sheriff's sale to defendant, John D. Flickinger. He further alleged that the execution was wrongful, because the underlying judgment was subsequently reversed and remanded to the domestic relations court. In their motion for summary judgment, Fanning & Harper take the position that their causing the execution to be levied on plaintiff's property was neither malicious nor wrongful because plaintiff did not post a supersedeas bond. In reply, plaintiff asserts that the procuring of the execution and sheriff's sale was wrongful because defendants knew that his assets were involved in a divorce case and that he could not make a supersedeas bond. He also argues that since Fanning & Harper were attorneys, they should have known that the previous judgment would be reversed. Merrell therefore concludes that the summary judgment proof raises a genuine issue of a material fact upon the question of whether the execution and sheriff's sale was wrongful. We find no merit in this contention.

The summary judgment proof shows without dispute that Fanning & Harper received a final judgment for their attorney's fees in the previous divorce case. Although plaintiff appealed, he did not supersede the judgment by filing a supersedeas bond. Under the provisions of Rule 627, Tex.R.Civ.P., the successful party to a judgment has a right, as a matter of law, to enforce the judgment where no supersedeas bond has been filed or approved. It thus appears that the legislature has conferred a statutory right on the party obtaining judgment to have execution issued thereon pending appeal, unless and until the judgment debtor files a proper supersedeas bond. The fact that the judgment debtor is financially unable to file such bond cannot destroy this statutory right. *Bryan v. Luhning*, 106 S.W.2d 403 (Tex.Civ.App.-Galveston 1937, no writ). Under these circumstances, Fanning & Harper, committed no wrong in seeking to enforce their adjudicated rights by a writ of execution. *Swafford v. Holman*, 446 S.W.2d 75, 80 (Tex.Civ.App.-Dallas 1969, writ ref'd n. r. e.). It follows that the summary judgment proof establishes as a matter of law that there is no genuine issue of fact as to one or more essential elements of the plaintiff's cause of action alleging Fanning & Harper maliciously and wrongfully caused the property to be sold under execution.

Merrell also sought a recovery against Fanning & Harper on the grounds of negligence. In this connection he alleged that Fanning & Harper had a duty to treat their former client's property (the duplex upon which execution was issued) with the utmost care, and that this duty continued after the attorney-client relationship ended. He cites no authority for this proposition and in our research we have been unable to find any. The summary judgment proof shows that the attorney-client relationship was terminated well before defendants instituted their intervention in the domestic relations court seeking a judgment for their attorney's fees. At the time Fanning & Harper were awarded the judgment for attorney's fees, the parties were clearly in an adversary position. Under these circumstances Fanning & Harper owed plaintiff no duty to protect or care for his property. Consequently, the conduct of Fanning & Harper in exercising their right to enforce their adjudicated rights, would not, as a matter of law, amount to a breach of duty on their part. It follows that the trial court properly entered a summary judgment in favor of Fanning & Harper because the proof establishes as a matter of law that there is no genuine issue of fact as to the essential elements of plaintiff's cause of action in this regard.

## MERRELL V. FIRST TEXAS SAVINGS ASSOCIATION

Merrell sued First Texas for damages alleging wrongful foreclosure of its deed of trust lien. He alleged that the foreclosure was wrongful because (1) the mortgage payments due thereon had been paid on his behalf by defendant Flickinger and (2) First Texas failed to notify him that the payments were delinquent.

The undisputed summary judgment proof offered by First Texas shows that (1) Merrell signed First Texas' note and deed of trust; (2) Merrell himself made no payments directly to First Texas after approximately March 1975; (3) on October 7, 1975, Merrell and his attorneys were put on notice of First Texas' intention to accelerate, the acceleration of his note itself, their intention to foreclose, and the time and place of the foreclosure; (4) the sum stated by First Texas in its notice of acceleration and foreclosure showed the amount due and payable on the loan; (5) Merrell failed and refused to pay or cause to be paid the monthly mortgage payments after being notified of First Texas' intention to foreclose; (6) First Texas did not receive any payments on the loan from March 30 to October 31, 1975; and (7) First Texas conducted the foreclosure as permitted by the deed of trust in question, selling the proper-

ty to Rod Poirot on November 4, 1975, who subsequently conveyed the same to Flickinger.

In response, Merrell offered summary judgment proof showing that after defendant Flickinger had purchased the duplex at the sheriff's sale, Flickinger called Merrell's attorneys and told them that he had bought the property and was going to make the mortgage payments to defendant First Texas. He stated that if Fanning & Harper won the suit which was then on appeal, he (Flickinger) would own the property, but if Merrell was successful on the appeal, he (Flickinger) would not be the owner of the property and in that event the mortgage payments would be treated as rent and Merrell would be the owner of the property. The record shows that in April 1975, Flickinger sent First Texas two checks representing two monthly payments, but the same were returned to Flickinger because the amounts were incorrect and at that time Flickinger had not been approved to assume Merrell's loan. Thereafter, no payments were made by Flickinger to First Texas. Instead, Flickinger made payments in escrow to Hexter-Fair Title Company because Merrell continued to claim title. The title company held the checks for several months. Upon being advised that the title dispute had been settled, the title company forwarded the checks to First Texas. Three days later Flickinger stopped payment on the checks because Merrell's attorneys had attempted to evict him from the property.

Plaintiff contends that the trial court erred in granting First Texas a summary judgment because the summary judgment proof shows, or raises a fact issue thereon, of whether the mortgage payments had been paid by defendant Flickinger and had been accepted by First Texas so as to bring the payments current prior to foreclosure. We find no merit in this contention.

The summary judgment proof shows that although First Texas approved Flickinger's application to assume the loan, Flickinger never returned to sign the papers. Although Hexter-Fair Title Company sent the escrow payments in the form of checks payable to First Texas, it is without dispute that First Texas did not negotiate the checks or agree to receive the same as payment of Merrell's past-due installments. Thus, the summary judgment proof establishes that the loan was delinquent for several months prior to the time First Texas foreclosed on the property. Under these circumstances, First Texas committed no wrong in enforcing its right of foreclosure for nonpayment of the indebtedness as provided for in the deed of trust. The summary judgment proof therefore establishes as a matter of law that there is no genuine issue of fact with regard to plaintiff's claim of wrongful foreclosure based on the theory that the past-due installments had been paid.

■ Plaintiff contends further that the court erred in granting First Texas' summary judgment because a genuine issue of fact arose as to whether First Texas failed to give Merrell fair notice that his payments were in default. In this connection, Merrell takes the position that he relied on Flickinger to make the payments out of the rent collected from the property, and since he received no notice from First Texas that the payments had not been made, he was led to believe that his payments were current. He further offered proof to the effect that had he been notified that the payments were delinquent, as was customary, he would have made the payments himself. Hence, he takes the position that since he was not notified of the delinquency, the foreclosure of First Texas' deed of trust lien was wrongful. We are not in accord with this proposition.

The summary judgment proof shows that Merrell lived in Chicago, Illinois, from February through October 1975. He admitted that he had no contact whatsoever with First Texas from January until he brought suit to enjoin the foreclosure and trustee's sale in November 1975. It is significant to note that Merrell

did not claim that First Texas failed to send him notice that the payments were delinquent. He instead states in his affidavit that he did not receive any delinquency notices. He testified that he later learned from his attorneys that notices of the delinquent payments were mailed to 3734 Weeburn Drive, which was the address of the property in question, but that he never lived there. He admitted that he knew the payments were due monthly, and if the same were not paid by Flickinger, he was obligated to make the payments himself.

The first mortgage note executed Merrell expressly recited that the makers waived notice of nonpayment. It further provided that the makers agreed that in the event of sale under the powers granted therein all recitals contained in the trustee's deed would be taken, prima facie, as established. Merrell does not contend that First Texas expressly promised to notify him of nonpayment.

In order to establish a cause of action for wrongful foreclosure under this facet of the case, Merrell would have the burden of proving that First Texas had a duty to notify him of the nonpayment of the monthly installments. In our view the summary judgment proof was sufficient to establish that no duty rested on First Texas to give Merrell notice of nonpayment of the monthly installments. Consequently, the summary judgment proof offered by First Texas establishes, as a matter of law, that there is no genuine issue of fact as to this essential element of plaintiff's cause of action. We hold that the trial court properly disposed of plaintiff's claim against First Texas by the entry of a summary judgment.

## MERRELL V. FLICKINGER

Merrell sued Flickinger alleging that inasmuch as the underlying judgment which formed the basis of the sheriff's sale was reversed, Flickinger never acquired title to the property in question. He therefore alleged that Flickinger was liable to him for the reasonable rental value of the property from March 4, to November 4, 1975, in the sum and amount of $8,100.00.

Merrell argues that the trial court erred in granting Flickinger a summary judgment because a genuine issue of fact remains to be determined on the question of the reasonable rental value of the duplex between March 4 to November 4, 1975. We find no merit in this contention, and it is accordingly overruled.

■■■ It is undisputed that Merrell did not post a supersedeas bond pending the appeal of the previous domestic relations court's judgment. Rule 627, Tex.R.Civ.P., authorizes execution on a judgment if no supersedeas bond is filed or approved. It has long been the rule in this state that an execution which has been issued on a judgment that has not been stayed or superseded will support the title acquired by a stranger to the proceedings even though the judgment is subsequently reversed. *Stroud v. Casey*, 25 Tex. 740 (1860); *Cordray v. Neuhaus*, 25 Tex.Civ.App. 247, 61 S.W. 415, 417 (Tex.Civ.App.1901, writ ref'd); *Huckins v. Kapf*, 14 S.W. 1016 (Tex.Civ.App.1889); see 24 Tex.Jur.2d *Executions* section 161 (1961); 30 Am.Jur.2d *Executions* section 437 (1967). It is without dispute that the defendant Flickinger, the execution purchaser, was a stranger to the proceedings. There is nothing in the summary judgment proof indicating that the underlying judgment was void on its face. The sheriff's deed under which Flickinger claims, has never been set aside. In these circumstances Flickinger held the legal title to the property and therefore had a right to the rents and revenues therefrom. Thus, the summary judgment proof shows that no genuine issue of fact existed upon plaintiff's claim for rents and therefore the trial court properly disposed of the claim by the entry of a summary judgment.

We now go back to plaintiff's main suit in which he alleged that the defendants conspired to deprive him of his property by

wrongfully causing the same to be sold by the Dallas County Sheriff at the execution sale and by causing the property to be sold at the subsequent trustee's sale. Plaintiff contends that the trial court erred in granting a summary judgment with regard to his cause of action for conspiracy because defendants failed to establish by summary judgment proof that no genuine issue of fact existed with regard to his claim of actionable conspiracy. As we view the record, the contention must be overruled.

An actionable civil conspiracy is a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. As a general rule, if an act done by one person cannot give rise to a cause of action, then that same act cannot give rise to a cause of action if done in pursuance of an agreement between several persons. *See* 12 Tex.Jur.2d *Conspiracy* section 16 (1960).

As we have heretofore attempted to demonstrate, the summary judgment proof shows, as a matter of law, that none of the alleged acts of any of the defendants were sufficient to give rise to a cause of action, since each of the defendants acted lawfully in attempting to protect their rights. While there is nothing in the summary judgment proof indicating the existence of a conspiracy, even if there was, such would not be actionable in the absence of a wrongful act on the part of at least one of the defendants. The summary judgment proof offered by the defendants shows, as a matter of law, that none of the defendants committed any wrongful act. Therefore, no genuine issue of fact remains to be determined on any of the essential elements of plaintiff's conspiracy claim. Accordingly, the trial court properly disposed of such claim by the entry of a summary judgment.

All of plaintiff's points of error have been considered and are overruled.

The judgment of the trial court is affirmed.